# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION; ROSA ARELLANO; DELFINA ARIAS; SONIA MENDOZA; ROSALVA RODRIGUEZ; CANDACE MICHELLE SVENNINGSEN; MICHAEL RAY GRAVES; ALICIA RODRIGUEZ; SERGIO B. RODRIGUEZ, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, MICHAEL CHERTOFF, SECRETARY; UNITED STATES DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT; JULIE L. MYERS, ASSISTANT SECRETARY, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN AND JANE DOES 1-100, <br><br> Defendants. | Civil Action No.: 2-07CV-188-J <br><br><br> **DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

Submitted by:

PETER D. KEISLER
Assistant Attorney General

RICHARD ROPER
United States Attorney

GORDON BRYANT
Assistant United States Attorney

DAVID J. KLINE
Principal Deputy Director

VICTOR M. LAWRENCE
Senior Litigation Counsel

CHRISTOPHER W. HOLLIS
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 305-0899
(202) 233-0397 (fax)
Christopher.Hollis@usdoj.gov

## TABLE OF CONTENTS

DEFENDANTS' MOTION TO DISMISS COMPLAINT ........................................................ 1

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT ................................................................................................................... 4

    I.      Standards of Review for Fed. R. Civ. P. 12 ............................................. 4

    II.     Subject Matter Jurisdiction ..................................................................... 5

          A.    Plaintiff Union Lacks Standing ................................................... 5

               1.    Plaintiff Union lacks individual standing to sue in its own right and should be dismissed as a party. ..................................................... 5

               2.    Plaintiff Union lacks associational standing and should be dismissed as a party. ................................................................... 8

          B.    Plaintiff Individuals Lack Standing ......................................... 12

    III.    Failure to State a Claim ......................................................................... 15

          A.    Plaintiffs' First, Fourth, and Fifth Amendment Claims Fail .................. 15

               1.    Defendants' actions were lawful and warranted under 8 U.S.C. § 1357(a)(1); INA § 287(a)(1). ..................................................... 15

               2.    Plaintiffs' Fourth and Fifth Amendment rights were not violated because they were not detained or seized. ................................. 16

               3.    Plaintiffs' First and Fifth Amendment rights were not violated because they were not denied access to the advice of counsel. ................................................................................. 20

          B.    Plaintiffs' Claim for Damages under *Bivens* Fails ................................. 21

          C.    Plaintiffs Fail to State a Claim Because the Court Cannot Grant the Injunctive Relief Requested ................................................................... 23

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

## CASES

Affiliated Prof'l Home Health Care Agency v. Shalala,
    164 F.3d 282 (5th Cir. 1999) ................................................................ 22, 23

Association of Community Organizations for Reform Now (ACORN) v. Fowler,
    178 F.3d 350 (5th Cir. 1999) ............................................................ 5, 6, 7, 12

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ........................................................................... 5

Bennett v. Spear,
    520 U.S. 154 (1997) ............................................................................... 6

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,
    403 U.S. 388 (1971) ................................................................. 4, 21, 22, 23

Blackie's House of Beef, Inc. v. Castillo,
    659 F.2d 1211 (D.C. Cir. 1981) ...................................................... 3, 15, 17

Burton v. City of Belle Glade,
    178 F.3d 1175 (11th Cir. 1999) ............................................................. 24

California Rural Legal Assistance Inc. v. Legal Services Corp.,
    917 F.2d 1171 (9th Cir. 1990) .............................................................. 10

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983) ................................................................ 9, 12, 13, 14

Cuvillier v. Taylor,
    -- F.3d -- 2007 WL 2892970 (5th Cir. 2007) .......................................... 5

Immigration and Naturalization Service v. Delgado,
    466 U.S. 210 (1984) ..................................................................... 16, passim

FDIC v. Meyer,
    510 U.S. 471 (1994) ............................................................................. 23

Havens Realty Corp. v. Coleman,
    455 U.S. 363 (1982) ............................................................................ 5, 7

Hunt v. Washington State Apple Advertising Comm.,
    432 U.S. 333 (1977) .................................................................. 8, 9, 10, 11

Immigration and Naturalization Service v. Delgado,
        466 U.S. 210 (1984) ................................................................................ 16, 17

International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n,
        389 U.S. 64 (1967) .......................................................................................... 24

International Union, UAW v. Brock,
        477 U.S. 274 (1986) ..................................................................................... 9, 10

Lewis v. City of Montgomery,
        2006 WL 1761673 (M.D. Ala. 2006) ................................................................ 22

Lujan v. Defenders of Wildlife,
        504 U.S. 555 (1992) ...................................................................................... 6, 12

Mahmud v. Oberman,
        508 F. Supp.2d 1294 (N.D. Ga. 2007) ............................................................. 22

Minnesota Federation of Teachers v. Randall,
        891 F.2d 1354 (8th Cir. 1989) .......................................................................... 10

Miranda v. Arizona,
        384 U.S. 436 (1966) ......................................................................................... 20

National Treasury Employees Union v. United States,
        101 F.3d. 1423 (D.C. Cir. 1996) ......................................................................... 7

New v. Sports & Recreation, Inc.,
        114 F.3d 1092 (11th Cir. 1997) ........................................................................ 22

Pasadena City Board of Education v. Spangler,
        427 U.S. 424 (1976) ......................................................................................... 24

Payne v. Travenol Laboratories, Inc.,
        565 F.2d 895 (5th Cir. 1978) ............................................................................ 24

Plotkin v. IP Axess Inc.,
        407 F.3d 690 (5th Cir. 2005) ........................................................................ 5, 19

Ramming v. United States,
        281 F.3d 158 (5th Cir. 2001) .............................................................................. 4

Rosemound Land and Gravel Co.,
        469 F.2d 416 (5th Cir. 1972) .............................................................................. 4

iii

Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,
 975 F.2d 1134 (5th Cir. 1992) ................................................................ 5

Todd v. Hawk,
 263 F.3d 162 (5th Cir. 2001) ................................................................ 23

United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,
 517 U.S. 544 (1996) ................................................................ 10

United States v. Bengivenga,
 845 F.2d 593 (5th Cir. 1988) ................................................................ 20

United States v. Stevens,
 487 F.3d 232 (5th Cir. 2007) ................................................................ 20, 21

## STATUTES

### Immigration and Nationality Act of 1952; as amended:

Section 287(a)(1),
 8 U.S.C. § 1357(a)(1) ................................................................ 15

## OTHER STATUTES

U.S. Const. art. III, § 2, cl. 1 ................................................................ 5

### Federal Rules of Civil Procedures

Fed. R. Civ. P. 12(b)(1) ................................................................ 2, 4

Fed. R. Civ. P. 12(b)(6) ................................................................ 2, 4, 5, 19

Fed. R. Civ. P. 65(d) ................................................................ 23, 24

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION; ROSA ARELLANO; DELFINA ARIAS; SONIA MENDOZA; ROSALVA RODRIGUEZ; CANDACE MICHELLE SVENNINGSEN; MICHAEL RAY GRAVES; ALICIA RODRIGUEZ; SERGIO B. RODRIGUEZ, )))))))) | |
| Plaintiffs, | Civil Action No.: 2-07CV-188-J |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, MICHAEL CHERTOFF, SECRETARY; UNITED STATES DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT; JULIE L. MYERS, ASSISTANT SECRETARY, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN AND JANE DOES 1-100, | |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

### Introduction

Plaintiffs in this case consist of an international union dedicated to the protection of its

members with respect to labor and employment issues, United Food and Commercial Workers

International Union (UFCW or Union), and eight individual plaintiffs who were employees of

Swift & Company and who were present during Immigration and Customs Enforcement (ICE)

worksite enforcement operations at Swift facility locations in Texas, Iowa, and Colorado.

Together, they seek to invoke this Court's jurisdiction as part of a nationwide challenge to the

constitutionality of ICE's worksite enforcement activities that target illegal aliens who are unlawfully employed and in some cases stealing the identities of United States citizens and lawful permanent residents.

As explained below, neither UFCW nor the individual plaintiffs have standing in this matter.  Accordingly, this lawsuit should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Moreover, even if this Court were to find that Plaintiffs have standing, Plaintiffs' Complaint is deficient because Plaintiffs fail to state a claim upon which relief may be granted.  Therefore, this Court may also dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6).

Statement of Facts

ICE's mission is to enforce the immigration laws of our country.  *See* Allen Decl. ¶ 3. There are a myriad of ways that ICE achieves this mission.  One way is by investigating companies who knowingly hire illegal aliens as part of its workforce.  *Id.*

ICE conducted an investigation which revealed that Swift & Co. (Swift), a company that processes meat and pork products for Americans' consumption, knowingly hired illegal aliens or aliens who had fraudulently assumed the identity of United States citizens.  *Id.* at ¶ 4.  Over the course of several months, ICE developed information during its investigation of Swift that revealed a widespread identity theft problem at Swift.  *Id.* at ¶ 4.

Secretary Chertoff announced that the workplace enforcement operation followed "months of investigation... targeted at [the] massive use of document fraud to support illegal work in the workplace."  Compl. ¶ 23.

After careful review of the investigation, ICE determined to apply for *Blackie's* warrants[1] in Texas, Iowa, and Colorado, among other locations, to obtain judicial authority for a search of Swift's premises for aliens who were illegally in the United States. Allen Decl. at ¶ 9. Federal Magistrate Judges in Texas, Iowa, and Colorado granted ICE authority to conduct the search. *See* Judicial Warrants attached as Exhibits 1-3.

After obtaining the warrants, ICE furthered its preparation for the searches by briefing all its agents who would conduct the searches. Allen Decl. at ¶¶ 6, 8. ICE also coordinated with Swift management to ensure: (1) the safety of all the employees; (2) the processing of food was only minimally disrupted; and (3) no meat was contaminated. *Id.* at ¶¶ 6-8. On December 16, 2006, ICE agents entered plants in Texas, Iowa, and Colorado to execute the *Blackie's* warrants. *Id.* at ¶ 9. As a result of the search, a significant number of illegal aliens were apprehended. *Id.* at ¶ 13.

Plaintiffs allege that UFCW members were "detained as a group, told to remain in specific locations for interrogation, and were not free to leave those areas." Compl. at ¶ 25. Plaintiffs do not allege that anyone asked to leave or tried to leave and was denied the right to leave. Given this freedom, Plaintiffs' characterizations of interviews conducted in cafeterias as detentions and interrogations are unsupported.

Plaintiffs seek declaratory and injunctive relief, along with incidental damages for the named individual plaintiffs, alleging violations of the Immigration and Nationality Act (INA) and the First, Fourth and Fifth Amendments to the Constitution. *Id.* ¶ 1. Plaintiffs have alleged the

---

[1] A *Blackie's* warrant is a civil warrant authorizing the entry of immigration officials upon premises where illegal aliens are believed to be present and permitting their questioning and arrest. *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1219-27 (D.C. Cir. 1981).

3

following causes of action: (1) unlawful mass detentions; (2) unlawful warrantless arrests; (3) failure to take into account the care of UFCW's members' children; (4) unlawful denial of access to counsel; and (5) damages under *Bivens*. *Id.* at ¶¶ 33-42.

Argument

## I. Standards of Review for Fed. R. Civ. P. 12

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow the movant to challenge the district court's subject matter jurisdiction to hear a case. Fed. R. Civ. P. 12(b)(1). The court can dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction maintains the burden of proof for a Rule 12(b)(1) motion to dismiss. *Id.* The plaintiff accordingly bears the burden of proof that jurisdiction exists. *Id.* Under Rule 12(b)(1), the court is not limited to the allegations of the complaint and may consider evidence outside the pleadings without converting the motion to one for summary judgment. *See Rosemound Land and Gravel Co.*, 469 F.2d 416, 417-18 (5th Cir. 1972).

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim attacks the complaint because it fails to state a legally cognizable claim. *Id.*; *Ramming*, 281 F.3d at 161. A motion to dismiss for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

4

Under a Rule 12(b)(6) motion, the complaint "must provide the plaintiff's grounds for

entitlement to relief – including factual allegations that when assumed to be true 'raise a right to

relief above the speculative level.'" *Cuvillier v. Taylor*, -- F.3d --, 2007 WL 2892970 *2 (5th

Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)).

In resolving a Rule 12(b)(6) motion to dismiss, a court accepts as true the well-pleaded

facts alleged in the complaint and construes the facts in the light most favorable to the plaintiff.

*See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). The court does not accept as true

conclusory allegations, unwarranted factual inferences, or legal conclusions. *Id.*

## II. Subject Matter Jurisdiction

### A. Plaintiff Union Lacks Standing

1.    Plaintiff Union lacks individual standing to sue in its own right and should be
      dismissed as a party.

Plaintiffs include the International Union of United Food and Commercial Workers as a

plaintiff organization that allegedly has been injured in this action. Compl. at ¶ 5. An

organization suing in its own right – like the case is here with the UFCW – must meet the same

constitutional standing requirements applicable to individuals. *See Association of Community*

*Organizations for Reform Now (ACORN) v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999) (citing

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)).

Federal courts have jurisdiction over only concrete cases or controversies. U.S. CONST.

art. III, § 2, cl. 1. In order to have Article III standing, a plaintiff must demonstrate that he or she

suffered injury in fact, that the injury is fairly traceable to the defendant's actions, and that the

injury will likely be redressed by a favorable decision. *See ACORN*, 178 F.3d at 356 (citing

5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  Plaintiffs' Complaint fails to establish "injury in fact" to the Union, and the Union therefore lacks standing to sue in its own right and should be dismissed as a party based on lack of subject matter jurisdiction.

The "injury in fact" prong of the standing test is qualitative, rather than quantitative. *ACORN*, 178 F.3d at 357-58.  The injury alleged "must be '(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical' to pass constitutional muster." *ACORN*, 178 F.3d at 357-58 (quoting *Lujan*, 504 U.S. at 560-61).

Plaintiff Union cannot establish injury in fact as a result of Defendants' actions.  The Complaint alleges injuries stemming from unlawful detention, warrantless arrests, denial of access to counsel, and failure to consider care of children.  However, individual plaintiffs – and not the UFCW itself -- were allegedly detained, arrested, denied access to counsel, etc.  The Union asserts that Defendants' worksite enforcement actions have "interfere[d] with UFCW's goals and work" and made their achievement "more difficult. [sic] time-consuming, and expensive."  Compl. at ¶5.  None of these allegations notifies Defendants or the Court as to what goals Defendants have interfered with and/or what resources the Union has expended as a result of Defendants' worksite enforcement actions.  By implication, these statements could refer to the financial costs the Union has incurred in bringing litigation such as the instant matter.  But controlling precedent holds that an organization's litigation costs do not necessarily establish an organization's standing to sue in its own right.  *See ACORN*, 178 F.3d at 358 (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)) (finding no plaintiff injury as a result of incurred litigation costs, the Fifth Circuit Court of Appeals held that an organization "cannot obtain standing to sue in its own right as a result of self-inflicted injuries").  Aside from Plaintiffs' oblique references to

6

litigation costs incurred by the Union, the Complaint fails to provide Defendants with sufficient notice as to what sort of resources Plaintiff Union refers in claiming diversion of its "limited resources."

In determining whether an organizational plaintiff showed "injury in fact" for standing purposes, the *ACORN* court required the organization to show a direct conflict between defendant's conduct in allegedly violating the National Voter Registration Act and the organization's mission. *See ACORN*, 178 F.3d at 361 (quoting *National Treasury Employees Union v United States*, 101 F.3d 1423, 1429-30 (D.C. Cir. 1996)). To find standing, the court further required that plaintiff make a clear showing that, as an organization, its "stated goals were 'at loggerheads' with defendant's conduct." *See ACORN*, 178 F.3d at 361. Without this showing, the assertion that defendant's conduct impeded plaintiff-organization's activities and therefore was the source of plaintiff's injury remained "entirely speculative." *Id.*

Plaintiff UFCW is required to show that Defendants' enforcement actions directly conflict with the Union's mission. To do so, the Union must have as its stated purpose, rather than its abstract social interest, the goal of guarding against unlawful and unconstitutional workplace immigration enforcement actions. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). However, the Union's organizational purpose is to protect its members against employer labor practices and conditions unfavorable to its members,[2] not to regulate

---

[2] The Union's website, *available at* http://www.ufcw.org (last visited Nov. 13, 2007), lists no constitution or *per se* compilation of overriding organizational goals. However, the website link "About UFCW" links to web pages entitled, "Who We Are" and "A Voice for Workers." These pages, available at http://www.ufcw.org/about_ufcw/who_we_are/voice.cfm (last visited Nov. 13, 2007), contain the statements that "workers are the union" and "workers determine the working conditions and concerns that will be bargained in their contract." The pages further state that the Union negotiates for the following benefits: negotiated wages, health

Defendants' national immigration enforcement actions. The goal of the Union is not to provide legal representation or support concerning immigration violations. In fact, a section on UFCW's website entitled, "Immigrant Workers" lists several non profit organizations, not itself, as "legal resources for immigrant workers." Because the Union functions as a protector of rights in the labor sphere, rather than in immigration, Plaintiff Union fails to show injury in fact for purposes of standing to sue in its own right. Therefore, this Court should dismiss the Union as a party to this matter.

      2.    <u>Plaintiff Union lacks associational standing and should be dismissed as a party.</u>

UFCW also fails to establish associational standing. Under the doctrine of associational standing and the test articulated in *Hunt v. Washington Apple*, an association has standing to bring suit on behalf of its members when (i) its members would otherwise have standing to sue in their own right; (ii) the interest the organization seeks to protect is germane to the organization's purpose; and (iii) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 343 (1977). Plaintiff Union fails the *Hunt* test under all three prongs and therefore should be dismissed as a party to this matter.

As an initial matter, and as discussed *infra*, Plaintiff Union's individual members have no standing to sue in their own right because they have not shown a real and immediate threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102-05 (1983). Plaintiff

---

care, retirement plans, defined work schedules, grievance procedures, reasonable workload requirements, workplace safety protections and training, protection from unfair treatment and favoritism by the boss, and job security and seniority benefits.

individuals simply cannot meet the burden that *Lyons* places on individuals seeking injunctive relief since they do not show that the threat of experiencing another enforcement action is real and immediate, rather than speculative. *See id.* Plaintiff Union therefore fails the first prong of the *Hunt* test.

Plaintiff Union also fails *Hunt's* second prong because the interest the Union seeks to protect is not germane to its purpose as an organization. *See Hunt*, 432 U.S. at 343. Plaintiff Union seeks a declaratory finding that Defendants' policies, procedures, and practices violate the INA; the First Amendment; the Fourth Amendment; the due process clause and equal protection guarantee of the Fifth Amendment. Compl. at ¶ 1. The Union also seeks injunctive relief requiring that Defendants comply with the INA and the First, Fourth, and Fifth Amendments when engaged in worksite enforcement activities. *Id.* As such, the Union as Plaintiff implicitly seeks to guard against allegedly unlawful enforcement activities as applied within the immigration law context. The Union's concern with immigration law enforcement, however, attempts to secure protection against an interest that is extraneous to the Union's purpose.

The Union's self-described organizational purpose is to protect its members against employer labor practices and conditions unfavorable to its members. Thus, in this employment setting, the Union's ostensible function would be the protection of its employee-members against potentially unfair labor practices in which employer-Swift might engage. In order to meet *Hunt's* second prong, the Union's stated interest as a party to this matter – guarding against allegedly unlawful and unconstitutional worksite immigration enforcement actions – must be a Union-identified organizational purpose. *See International Union, UAW v. Brock*, 477 U.S. 274, 286 (1986); *see also Minnesota Federation of Teachers v. Randall*, 891 F.2d 1354, 1359 (8th Cir.

9

1989) (holding that a teacher's union did not have associational standing because its interest in

the use of the union's tax money to support sectarian schools was not germane to the

organization's purpose). As outlined above, however, the Union's self-identified overriding goal

is the protection of its members against unfair labor practices by employers. Aside from Plaintiff

Union's recent interest as exemplified by the instant Complaint, Defendants are unaware of and

Plaintiffs have failed to allege any clearly defined organizational goals that Plaintiff Union has

set for itself regarding the conduct of national immigration enforcement.

In *International Union, UAW v. Brock*, the U.S. Supreme Court looked to the union's

constitution to determine whether the plaintiff met the second prong of *Hunt's* associational

standing test. *See International Union, UAW v. Brock*, 477 U.S. 274, 286; *see also United Food*

*and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555-56 (1996)

(finding that, because plaintiff union was organized for purpose of ensuring clear notice of

planned plant closings, its interest in members' claim was germane and thus met the second

prong of *Hunt's* associational standing test); *California Rural Legal Assistance Inc. v. Legal*

*Services Corp.*, 917 F.2d 1171, 1174 (9th Cir. 1990) (finding plaintiff unions met second prong

of *Hunt* associational standing test when one union's clearly stated objectives aligned with

subject of the suit – unions' efforts to enjoin Legal Services Corporation's regulatory ban against

unions' use of Corporation-supplied funding to provide resident alien legal services). The union

in *Brock* had clearly stated as one of its goals "to work for legislation on a national scale, having

as its object the establishment of real social and unemployment insurance, the expense of which

is to be borne by the employer and the Government." *See Brock*, 477 U.S. at 286. The Court

found that, in addition to having identified the benefits issue in question using specific language

10

in the union's constitution, the union had long lobbied for the establishment of the very workers'

benefits for which the union claimed compensation in its suit. *See id.* at 286-87. Thus, the fact

that the Union's stated organizational purpose aligned with the subject of the suit established

associational standing. *Id.*

In contrast, Plaintiff Union's interest in the instant matter as compared to its stated

purpose is severely attenuated when compared to the plaintiff union in *Brock.* Plaintiff Union

points to neither a constitution nor other documents stating that one of its primary purposes is to

guard against unlawful and unconstitutional worksite immigration enforcement actions. Rather,

based on its own publicly available information, Plaintiff Union's organizational purpose is the

protection of its members' rights against unfair employer labor practices. The proposition,

therefore, that one of the Union's overriding organizational purposes is to shepherd the direction

of national immigration law enforcement is a misrepresentation that conveniently exchanges the

Union's interest in protecting its members against unfair labor practices for the Union's

temporary interest in this litigation. Because immigration law enforcement is an interest that is

extraneous, rather than germane, to the Union's purpose, Plaintiff Union fails *Hunt's* second

prong of associational standing and should be dismissed as a party to this matter.

Ultimately, Plaintiff Union fails to qualify for associational standing under the *Hunt* test

because it fails the third prong as well. Both the *claim asserted* (violations of individuals' rights

under both the Constitution and the INA) and the *relief requested* (declaratory and injunctive

relief barring Defendants from continuing the alleged conduct) require the participation of

individual members in the lawsuit. For the reasons stated above and in section II.B. *infra,*

individual members have no standing in this lawsuit. Plaintiff Union is precluded on this basis

11

from proceeding as a party under the doctrine of associational standing.

B. Plaintiff Individuals Lack Standing

The Complaint names eight individual plaintiffs who were present during ICE worksite enforcement actions. *See* Compl. at ¶¶ 6-13. Plaintiff individuals seek injunctive and declaratory relief requiring Defendants to comply with the INA, and the First, Fourth, and Fifth Amendments. Plaintiff individuals are not entitled to injunctive relief, however, because they fail to show a real and immediate threat of future injury and therefore lack standing. Without standing, Plaintiff individuals lack subject matter jurisdiction and their claims must be dismissed.

As discussed above, for a plaintiff to have standing, he or she must demonstrate they have suffered injury in fact, that the injury is fairly traceable to the defendant's actions, and that the injury will likely be redressed by a favorable decision. *See ACORN*, 178 F.3d at 356 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). To meet standing's "injury in fact" requirement, a plaintiff seeking injunctive or declaratory relief must prove not only a past injury, but also a real, immediate threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-05 (1983) (requiring that, because injunctions regulate future conduct, a party seeking injunctive relief must allege a threat that is real and immediate, not merely conjectural or hypothetical).

Plaintiffs unsuccessfully attempt to establish a real, immediate threat of future injury to Plaintiff individuals on two bases. First, Plaintiffs rely on allegations of past experiences with ICE. Second, Plaintiffs do not allege that a policy and practice threatens to injure individual Plaintiffs in the future; Plaintiffs merely allege that Defendants carried out worksite enforcement actions pursuant to policy and practice that will continue in the future. Compl. at ¶ 31. Plaintiffs

12

have not met their burden of establishing real and immediate threat because they seek prospective

relief yet rely on harm that has squarely passed. *See Lyons*, 461 U.S. at 105.

In *Lyons*, the plaintiff sought to enjoin the use of 'chokeholds' by police officers in the

future by citing to injuries the plaintiff allegedly suffered when placed in a chokehold, and he

alleged that the use of chokeholds was "routine" and would occur again. *Id.* The Court first

found that plaintiff's allegations failed to establish a real and immediate threat that he would

again be stopped for a traffic violation or any other offense by an officer "who would illegally

choke him into unconsciousness without any provocation or resistance on his part." *Id.* Next, it

found that plaintiff's allegation that "the police in Los Angeles routinely apply chokeholds in

situations where they are not threatened by the use of deadly force falls far short of the

allegations that would be necessary to establish a case or controversy between *these* parties." *Id.*

(emphasis added). The Court defined precisely what allegation would suffice to meet plaintiff's

standing threshold as specifically related to his claim by stating that the plaintiff would not only

have to allege he would have another encounter with the Los Angeles police, but that he also

would have to make one of the two following "incredible" assertions:

> either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom
> they happen to have an encounter, whether for the purpose of arrest, issuing a citation or
> for questioning or, (2) that the City ordered or authorized police officers to act in such
> manner.

*Id.* (emphasis in original). In defining the particular plaintiff's burden with such specificity, the

*Lyons* Court pointedly reiterated the gravity associated with requests for injunctive relief since

the violation of an injunction can thrust upon the violator serious consequences. The *Lyons*

Court accordingly found that the plaintiff had not established standing because – based on the

13

particular facts and the relief requested – the plaintiff could never have met his burden as the Court identified it above. *See Lyons*, 461 U.S. at 105.

Following the principles delineated in *Lyons*, Plaintiff individuals in the instant matter would have to show a real and immediate threat of the following to meet their burden for standing: that they will have another encounter with ICE agents; and either (1) all ICE agents always conduct worksite enforcement actions in a manner that violates the constitutional rights of every worker they encounter as alleged in the Complaint; or (2) the Government ordered or authorized ICE agents to always violate the constitutional rights of every worker they encounter as alleged in the Complaint. *See id.* The possibility that such a proposition could occur again is as incredible in the instant matter as it was for the *Lyons* Court. First, Plaintiff individuals cannot realistically show they are threatened with the same encounter; it is completely speculative that these individual Plaintiffs will ever again encounter ICE agents. Second, the suggestion that all ICE agents always violate the Constitution when conducting worksite enforcement actions – or even that ICE agents possess the authorization to do so – defies rational sense.[3] Because Plaintiff individuals cannot meet their burden as articulated in *Lyons*, they fail to demonstrate standing. Thus, the Court should dismiss their claim for lack of subject matter jurisdiction.

---

[3] This argument applies equally to Plaintiff Union. For the Union to meet the *Lyons* standard regarding injunctive relief, it too would have to show not only a likelihood that the Union will again encounter ICE agents in circumstances similar to the instant, but also that ICE conducts its worksite enforcement actions in a manner that violates the constitutional rights of every worker ICE encounters and that the Government has ordered or authorized ICE to always violate workers' constitutional rights in this manner. As is the case regarding individual plaintiffs, it is similarly irrational to assert that ICE agents have authority to act in such an unconstitutional manner with regard to Plaintiff Union.

14

### III. Failure to State a Claim

    A. <u>Plaintiffs' First, Fourth, and Fifth Amendment Claims Fail</u>

    1.    <u>Defendants' actions were lawful and warranted under 8 U.S.C. § 1357(a)(1); INA § 287(a)(1).</u>

ICE conducted worksite enforcement actions at six Swift facilities on December 12, 2006. Allen Decl. at ¶ 9. ICE agents, acting on lawfully issued warrants, interviewed Swift employees after extensive coordination with Swift management on issues ranging from participant safety to consumer health to Swift's own expressed business considerations. *Id.* at ¶¶ 6-9; Exhibits 1-3. Defendants lawfully conducted the Swift factory surveys and therefore did not violate immigration regulations or employees' constitutional rights.

ICE agents were lawfully present at Swift facilities pursuant to civil warrants issued by Federal Magistrate Judges after ICE demonstrated its reasonable belief that illegal aliens were present at Swift facilities. Allen Decl. at ¶ 9; Exhibits 1-3. The use of civil warrants to authorize entry upon premises where illegal aliens are believed present and to permit their questioning has longstanding judicial approval. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211 (D.C. Cir. 1981). In their search for illegal aliens and as permitted through the issued warrants, ICE agents coordinated with Swift managers and supervisors for use of the facility cafeterias and training rooms while surveying the citizenship and immigration status of plant workers on duty at the time of the interviews. Allen Decl. at ¶ 7. Significantly, even without a warrant, ICE agents are statutorily authorized to interrogate any alien or person believed to be an alien as to the alien's right to be or to remain in the United States. *See* 8 U.S.C. § 1357(a)(1); INA § 287(a)(1).

The Swift factory surveys were the result of lawfully issued warrants and Defendants did not violate Plaintiffs' constitutional rights or immigration regulations when acting pursuant to the warrants. Accordingly, Plaintiffs' claims should be dismissed for failure to state a claim.

2.    <u>Plaintiffs' Fourth and Fifth Amendment rights were not violated because they were not detained or seized.</u>

Plaintiffs allege Defendants violated the Fourth and Fifth Amendments, as well as the INA, when Plaintiff individuals were allegedly detained and seized without warrants in the course of the Swift factory interviews. Plaintiffs conclusory statements do not establish any actionable constitutional claims or due process violations because Defendants acted pursuant to lawfully issued warrants.

In *Immigration and Naturalization Service v. Delgado*, 466 U.S. 210 (1984), the U.S. Supreme Court reviewed an immigration enforcement action in the context of a factory survey with circumstances nearly identical to those of the instant matter. Seeking declaratory and injunctive relief, the *Delgado* plaintiffs alleged that the INS, in conducting factory interviews pursuant to warrants seeking numerous unidentified illegal aliens employed at factories, violated plaintiffs' Fourth Amendment rights. *See id.* at 212-13. The INS in *Delgado* positioned agents at building exits while other agents interviewed employees within the factory. *Id.* Approaching employees at their work stations, the agents in *Delgado* identified themselves and asked employees about their citizenship status, whereupon the questioning ended if the employee responded that they were a United States citizen and the reply was credible. *Id.* If the employee's response was unsatisfactory or was an admission that the employee was an alien, they were asked to produce immigration status documentation. *Id.* The *Delgado* court held that

16

neither individual questioning at employee work stations nor the fact that agents stationed themselves at building exits constituted a seizure of the *entire work force* or a seizure or detention of *individual employees*. *Id.* at 218-20. When deciding whether the survey violated the Fourth Amendment, the Court articulated the applicable standard by stating, "[u]nless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *Id.* at 216.

Defendants conducted the Swift factory interviews in much the same manner as the *Delgado* interviews. After obtaining *Blackie's* warrants, ICE agents coordinated with Swift management for entry into the various Swift plants. *See* Exhibits 1-3; Allen Decl. at ¶ 10. ICE agents positioned themselves at building exits. *See* Allen Decl. at ¶ 12. Meanwhile, because of safety concerns due to the sharp tools and machinery used in the meat packing and slaughtering processes, as well as the large number of employees involved, Swift managers assisted agents by assembling workers from facility buildings into either cafeterias or training rooms. *Id.* at ¶ 10. Swift managers assisting agents told employees that agents were present at the plant and asked employees for their cooperation. *Id.* Employees who self-identified during interviews by agents that they were United States citizens and credibly verified their status left the interview areas. Remaining employees were separated into two groups depending on their representation that they were working with or without proper documentation. *Id.* at ¶ 11. All interviews were conducted in English or Spanish based on the language spoken best by the interviewee. *Id.* Employees were free to use cell and pay phones to contact family, friends, and anyone else for any purpose. *Id.* at ¶ 12.

17

Although the Complaint contains no allegations that employees refused to cooperate with the interviews, attempted to exit the building, or were denied the ability to exit, Plaintiffs nevertheless claim the factory interviews constituted seizure and detention. As outlined above though, the U.S. Supreme Court in *Delgado* spoke extensively on facts nearly identical to those at issue here and found no seizure or detention. In fact, the only discernable distinction between *Delgado* and Plaintiffs' claim is that interviews occurred at work stations there and in the facilities' cafeterias or training rooms here. Nonetheless, the choice of using Swift cafeterias and training rooms as the interview venues, rather than employee work stations, was wholly reasonable and preferable for three reasons.

First, as mentioned above, ICE agents could not safely conduct interviews at Swift work stations in light of the sharp instruments throughout work areas, and they thus interviewed employees in spaces most removed from such dangers. Significantly, such safety concerns were not at issue in *Delgado* since that survey occurred – not in the high-tech butchery that is the Swift meat packing plant – but instead in a garment factory. *Delgado*, 466 U.S. at 210.

Second, consumer health and sanitary concerns surrounding the nature of Swift's meat processing plant dictated that ICE agents conduct interviews in an area separate from the employees' work stations. ICE agents coordinated extensively with the FDA and Swift to minimize the potential of contamination and overall work disruption. Allen Decl. at ¶¶ 6-8. No such concerns were present in *Delgado*.

Finally, ICE's use of cafeterias or training rooms as the interview sites offered the most effective protection against Fourth Amendment violations by ensuring the interviews occurred in the most public spaces available at Swift facilities. ICE's choice to use spaces available both to

employees and the public alike – which was the cafeteria wherever possible – helped eliminate as reasonably as possible any potential sense of seizure or detention on behalf of interviewees. Most importantly, because this choice of interview venue ensured that "other people were in the area during the [ICE] agents' questioning," it accorded with *Delgado's* Fourth Amendment detention and seizure considerations regarding public versus private encounters between law enforcement officers and members of the public. *Delgado*, 466 U.S. at 218 n.5; 217-18 (finding that, for Fourth Amendment purposes, individual plaintiffs' encounters with INS officers in their worksite equated to citizen encounters with police in public; and that no seizure or detention resulted from such encounters when INS agents stationed themselves at factory exits).

Furthermore, any allegation that the interviewing of employees in the cafeterias or training rooms while stationing ICE agents at exits converts the factory surveys into detentions overlooks *Delgado's* unequivocal finding: since there was nothing in the record indicating that agents at exits actually prevented people from leaving, plaintiffs could not show that detention of interviewees was the agents' purpose, rather than simply ensuring that all persons present were interviewed. *Id.* at 218. The same holds true here: there are no allegations in the Complaint that specific employees attempted but were prevented from leaving an exit. Instead, the Complaint contains merely conclusory statements that seizure and detention occurred. Such statements are insufficient to carry Plaintiffs' 12(b)(6) burden. *See Plotkin*, 407 F.3d at 696.

Because Plaintiffs were neither detained nor seized, Defendants did not violate Plaintiffs' Fourth or Fifth Amendment rights. The Court accordingly should dismiss the first and second causes of action for failure to state a claim.

19

3.    <u>Plaintiffs' First and Fifth Amendment rights were not violated because they were not denied access to the advice of counsel.</u>

Plaintiffs allege Defendants denied them access to the advice of counsel during detention and therefore violated Plaintiffs' First and Fifth Amendment rights.  As discussed above, however, no individual Plaintiffs were detained in the course of Defendants' worksite enforcement actions.  Because no individuals were detained during the worksite enforcement actions, Plaintiff individuals' right to access the advice of counsel during the interviews was not implicated and Defendants therefore did not violate Plaintiff individuals' First and Fifth Amendment rights. *See Miranda v. Arizona*, 384 U.S. 436, 471 (1966)) (holding that right to counsel inherent with Fifth Amendment privilege against self-incrimination attached upon custodial interrogation and that, upon custodial interrogation, there existed the right to consult with counsel prior to questioning and to have counsel present during questioning); *United States v. Stevens*, 487 F.3d 232, 241 (5th Cir. 2007) (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) (en banc)) (holding that an individual is "in custody" for *Miranda* purposes "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest").

The Swift factory surveys occurred within a work environment that uses sharp tools and machinery due to the meat packing and slaughtering processes involved with Swift's work.  The large number of employees and the inherently dangerous environment in which the enforcement actions occurred caused safety concerns.  In addition, Swift management had concerns regarding product contamination and consumer health.  To alleviate these concerns, Defendants

20

interviewed individual Plaintiffs in Swift cafeterias and training rooms to ensure these areas were free of sharp objects such as those used in the slaughtering of animals and packing of meat. Individual Plaintiffs were not prevented from leaving the areas in which interviews were conducted, and it is fallacious to assert that – because no individual employees attempted to leave the interview areas – employees were therefore detained during the interviews. *See Delgado*, 466 U.S. at 1763 (finding no detention of employees occurred when, even though INS agents were stationed at factory doors, there was no record that agents prevented employees from leaving).

Because employees were not detained, then, they could not have been denied access to counsel. *See Stevens*, 487 F.3d at 241. Employees were free to use pay and cell phones throughout the course of the factory surveys. The Complaint does not allege that any of the individual Plaintiffs requested access to counsel in the course of the enforcement actions. Compl. at ¶¶ 6-13. It is purely conclusory and rather disingenuous, then, that the Complaint states that factory workers were not permitted access to counsel when it names no individual Plaintiffs who can back up this assertion. *Id.* Accordingly, the Court should dismiss for failure to state a claim the fourth cause of action alleging that Plaintiff individuals were denied access to counsel in violation of their First and Fifth Amendment rights.[4]

---

[4] Plaintiffs' third cause of action alleges Defendants' "Failure to take into account the care of UFCW's members' children." The Court lacks subject matter jurisdiction over this claim because Plaintiffs lack standing to bring it – no individual Plaintiffs alleged they had children who were affected by the enforcement actions. Moreover, the third cause of action fails to state a claim because it does not state how the factory surveys implicate the care and custody of children and thereby violate the Fifth Amendment as alleged.

B.  Plaintiffs' Claim for Damages under *Bivens* Fails

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* provides a basis

for a citizen to sue a federal official in their individual capacity for constitutional rights violations

when the official, acting under color of federal authority, violates the citizen's federally protected

rights. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

(1971); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285-86 (5th Cir.

1999).

Defendants John and Jane Does 1-100 are not parties to this suit.  They have not been

served and therefore are not required to respond.  *See, e.g., Mahmud v. Oberman*, 508 F.

Supp.2d 1294, 1296 n. 1 (N.D. Ga. 2007) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d

1092, 1094 n. 1 (11th Cir. 1997) ("[F]ictitious party practice is not permitted in federal court"));

*see also Lewis v. City of Montgomery*, 2006 WL 1761673, at *2 (M.D. Ala. 2006) ("In

general,'fictitious-party pleading is not permitted in federal court.' ").  Moreover, because they

are fictitious parties and fictitious party pleading is not permitted in federal court, Defendants

John and Jane Does 1-100 should be dismissed as parties to this suit.  *See, e.g., Mahmud*, 508 F.

Supp.2d at 1296 n. 1.

Furthermore, to the extent that the *Bivens* claims are against defendants in their official

capacities, official capacity suits against federal employees are generally treated as against the

United States. *See Todd v. Hawk*, 263 F.3d 162 (5th Cir. 2001).  Suits against the United States

brought under the civil rights statutes, including *Bivens* actions, are barred by sovereign

immunity. *See Affiliated Prof'l Home Health Care Agency*, 164 F.3d at 285-86.  Plaintiffs'

*Bivens* claim is therefore barred as a matter of law. *See Todd*, 263 F.3d 162 (citing *Affiliated*

22

*Prof'l Home Health Care Agency*, 164 F.3d at 286); *see also FDIC v. Meyer*, 510 U.S. 471, 483-86 (1994) (no *Bivens* cause of action permitted against a federal agency).

Because Defendants have not served Defendants John and Jane Does 1-100, and because such fictitious party pleading is not permitted in federal court, Plaintiffs' fifth cause of action should be dismissed for failure to state a claim.[5]

C. Plaintiffs Fail to State a Claim Because the Court Cannot Grant the Injunctive Relief Requested

Plaintiffs request that the Court issue an injunction requiring Defendants to "comply with the Immigration and Nationality Act and the Fourth Amendment and the Due Process Clause and equal protection guarantee of the Fifth Amendment to the United States Constitution when engaged in workplace enforcement activities." Complaint at p.15. The Court cannot grant this requested relief, however, because such broad, generalized injunctive relief is not available to Plaintiffs.

An injunction must be specific in terms and describe in reasonable detail the act or acts sought to be restrained. Fed. R. Civ. P. 65(d). Specificity of terms in the injunction reflects the "seriousness of the consequences which may flow from a violation of an injunctive order." *Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895, 898 (5th Cir. 1978) (citing *Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 438-39 (1976)). An injunction must contain an operative command capable of enforcement. *See International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 73-74 (1967). Controlling precedent has set aside injunctions that are too generalized in their failure to specify the conduct they prohibit,

---

[5] In any case, Plaintiffs' *Bivens* claims should be dismissed because, as explained *supra*, all alleged activity is constitutional.

terming them "'obey the law' injunctions." *See id*; *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (citing *Payne*, 565 F.2d at 898).

In *Payne v. Travenol Laboratories, Inc.*, the Fifth Circuit Court of Appeals found an injunction went beyond the allowable limits of Rule 65(d) when it prohibited defendant company from "discriminating," yet the injunction failed to specify the sort of actions it was intended to reach any more than the existing Title VII employment discrimination statute itself. *See Payne*, 565 F.2d at 898. Similarly, in *Burton v. City of Belle Glade* the Eleventh Circuit cited to *Payne* in finding that an injunction failed to meet Rule 65(d) specificity standards, could not be enforced, and thus was not an available remedy when it prohibited defendant city from "discriminating" in future annexation decisions. *See Burton*, 178 F.3d at 1201.

These decisions make clear the courts' inability to issue injunctions that restate or reaffirm the law in the form of "obey the law" mandates. Plaintiffs' request that the Court issue an injunction requiring Defendants to comply with the INA and the Fourth and Fifth Amendments during worksite enforcement activities asks the Court to restate the law in the form of an injunction. Because this Court cannot issue such injunctions and therefore cannot grant Plaintiffs' requested relief, it should dismiss the Complaint for failure to state a claim.

//

//

24

Conclusion

For the foregoing reasons, the Court should dismiss this Complaint for lack of subject

matter jurisdiction and for failure to state a claim.

PETER D. KEISLER
Assistant Attorney General

RICHARD ROPER
United States Attorney

GORDON BRYANT
Assistant United States Attorney

DAVID J. KLINE
Principal Deputy Director

VICTOR M. LAWRENCE
Senior Litigation Counsel


By: /s/ Christopher W. Hollis
CHRISTOPHER W. HOLLIS
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 305-0899
(202) 233-0397 (fax)
Christopher.Hollis@usdoj.gov

25

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Motion to

Dismiss Complaint was served via the district court's electronic filing system on this 13th day of

November, 2007 to the following counsel:

**Philip R Russ**
Law Office of Philip R Russ
2700 S Western
Suite 1200
Amarillo, TX 79109
806/358-9293
Fax: 806/358-9296 FAX
Email: philiprruss@russlawfirm.com

**Carlos R Holguin**
Center for Human Rights & Constitutional Law
256 S Occidental Blvd
Los Angeles, CA 90057
213/388-8693
Fax: 213/386-9484
Email: crholguin@centerforhumanrights.org

**Edward P Wendel**
United Food & Commercial Workers Intl Union
1775 K St NW
Washington, DC 20006-1598
202/466-1521
Fax: 202/728-1803

**Gening Liao**
United Food & Commercial Workers Intl Union
1775 K St NW
Washington, DC 20006-1598
202/466-1521
Fax: 202/728-1803

**Peter A Schey**
Center for Human Rights & Constitutional Law
256 S Occidental Blvd
Los Angeles, CA 90057
213/388-8693 ext 104
Fax: 213/386-9484
Email: pschey@centerforhumanrights.org

**Stephanie Richard**
Center for Human Rights & Constitutional Law
256 S Occidental Blvd
Los Angeles, CA 90057
213/388-8693
Fax: 213/386-9484

/s/ Christopher W. Hollis
CHRISTOPHER W. HOLLIS
U.S. DEPARTMENT OF JUSTICE