UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION; ROSA ARELLANO; DELFINA ARIAS; SONIA MENDOZA; ROSALVA RODRIGUEZ; CANDACE MICHELLE SVENNINGSEN; MICHAEL RAY GRAVES; ALICIA RODRIGUEZ; SERGIO B. RODRIGUEZ, <br><br>   Plaintiffs, <br><br>   v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, MICHAEL CHERTOFF, SECRETARY; UNITED STATES DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT; JULIE L. MYERS, ASSISTANT SECRETARY, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN AND JANE DOES 1-100, <br><br>   Defendants. | Civil Action No.: <br> 2-07CV-188-J |

### DECLARATION OF MATTHEW C. ALLEN

I, Matthew C. Allen, make the following declaration in lieu of an affidavit, as permitted by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed with the United States District Court for the Northern District of Texas, Amarillo Division, and that it is the legal equivalent of a statement under oath.

1. I am the Deputy Assistant Director (DAD) of the Narcotics, Financial, and Public Safety Division of the Office of Investigations, United States Immigration and Customs Enforcement (ICE) in the Department of Homeland Security (DHS). I have held this

position since August 2007. From January 2006 through August 2007 I served as both the DAD and acting DAD for the Critical Infrastructure and Fraud Division in the ICE, Office of Investigations. My duties included the operational and programmatic oversight of several programmatic areas, including the ICE Worksite Enforcement Program. Before that position, I served as Headquarters Unit Chief for the Contraband Smuggling Unit and previously served as the Resident in Charge (RAC) in Nogales, Arizona, where I was responsible for managing all of the ICE investigative activities within the Nogales geographic area.

2. As Deputy Assistant Director of the Critical Infrastructure and Fraud Division, I have personally supervised and had oversight responsibility for more than fifty ICE worksite enforcement operations. In that capacity, and based upon reasonable inquiry and my knowledge, information, and belief, I state the following:

3. Among its numerous responsibilities, ICE is charged with the enforcement of immigration laws in the United States. This obligation requires ICE to investigate employers who knowingly hire illegal aliens as part of their workforce in violation of Federal law. ICE also investigates the immigration status of employees to determine whether they are authorized to reside in and work in the United States in accordance with Federal law.

4. On February 14, 2006, the ICE office in Des Moines, IA, opened an investigation into the Marshalltown, Iowa, Swift & Co. (Swift) pork processing plant. ICE also opened investigations of the Swift plants operating in Cactus, Texas, and Greeley, Colorado, on

July 20, 2006, and May 24, 2006, respectively. These investigations revealed that large numbers of suspected illegal aliens were employed at these and other Swift processing plants and that they had gained employment by falsifying employment eligibility forms (Form I-9) and had provided false or fraudulently obtained identity and eligibility documents to prove their eligibility to work in the United States.

5. As early as July 2006, ICE began planning for worksite enforcement operations at several Swift plants with the purpose of acting upon ICE's investigative findings of a large number of illegal aliens employed at Swift and alien use of U.S. citizen social security numbers or assumed identities. At this time Swift was aware of the ICE investigation.

6. While ICE was planning worksite enforcement operations at Swift plants, Swift approached the Department of Justice and ICE to discuss the enforcement operation. During meetings between ICE and Swift, ICE made it clear that it had an obligation to enforce the law but would balance that obligation with both the safety of Swift and ICE employees, the safety of the food supply, and the impact on Swift's business operations.

7. To ensure both the safety of those involved in the operation and minimize the tainting of unprocessed food, Swift management and ICE agents in Cactus, Texas; Marshalltown, Iowa; and Greeley, Colorado, agreed to conduct employee interviews away from the production (food processing) areas. In general, employees were directed to Swift cafeterias when available or employee training rooms when cafeterias were unavailable.

8. In order to minimize undue product loss and to protect consumer health, ICE agents

planned to conduct the operation early in the day, prior to the initiation of full production at the plants. Prior to the operation, ICE coordinated with the Food and Drug Administration's (FDA) Food Safety Inspection Service to determine what special equipment was necessary for ICE agents to wear during the action to protect against contamination of Swift's consumer product. ICE expended significant resources in the purchase of sterile, hygienic masks and other clothing appropriate for wear during the operation by agents who went into plant production areas.

9.  On December 12, 2006, ICE conducted simultaneous, coordinated worksite enforcement actions at six Swift plants, including those at Cactus, Texas; Marshalltown, Iowa; and Greeley, Colorado, in accordance with warrants issued by Federal Magistrate Judges in Texas, Iowa, and Colorado.

10. Upon ICE's arrival at each plant, ICE notified Swift management officials regarding the service of the warrants and sought Swift's cooperation in the safe execution of the warrants. Swift management informed employees that ICE was present and would be conducting consensual interviews of employees' citizenship and immigration statuses. Swift management assisted by bringing employees to the interview sites in staggered groups.

11. At the interview sites, employees were given the opportunity to self-identify regarding their citizenship and immigration status. All communication was conducted in English or Spanish. Those claiming legal status were asked to associate on one side of the room and

those claiming no legal status were asked to associate on the opposite side of the room. During interviews, employees were questioned about their immigration and work authorization status. The interviews were conducted in English or Spanish based on the language spoken best by the interviewee.

12. Agents were stationed at plant exits. However, employees were free to leave the premises and to use cell and pay phones to contact family and friends for any purpose. To my knowledge, no employees interviewed requested the advice of counsel in the course of the interviews.

13. The December 12th operation resulted in the arrest of 1,297 individuals who were illegally present in the United States for administrative immigrations violations. 274 of these individuals were also arrested criminally for either Federal or State violations, primarily identity theft.

I declare under penalty of perjury that the foregoing is true and correct.

November 13, 2007                    Respectfully submitted,

MATTHEW C. ALLEN
Deputy Assistant Director
Narcotics, Financial, and Public Safety Division
Office of Investigations, ICE
425 I Street, NW
Washington, D.C. 20536
(202) 514-0078
(202) 514-0051 FAX